



UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | | |
|---|---|---|
| In re | ) | Case No. LA 06-11892 ER |
| | ) | |
| | ) | Chapter 7 |
| | ) | |
| SILVIA ELIZABETH MITCHELL | ) | MEMORANDUM OF DECISION GRANTING |
| | ) | THE UNITED STATES TRUSTEE'S |
| | ) | MOTION TO DISMISS CHAPTER 7 |
| | ) | CASE WITH PREJUDICE PURSUANT TO |
| | ) | 11 U.S.C. § 707(b)(3)(A) |
| | ) | |
| | ) | |
| | ) | Date:  October 19, 2006 |
| | ) | Time:  1:30 P.M. |
| Debtor. | ) | Place: Courtroom 1568 |
| | ) | 255 E. Temple Street |
| | ) | Los Angeles, CA 90012 |
| | ) | |

The United States Trustee ("UST") filed a Motion to Dismiss
Chapter 7 Case with Prejudice Pursuant to 11 U.S.C. § 707(b)(3)(A) and
Contingent Motion to Extend Bar Date for Filing Complaint under 11
U.S.C. § 727 Objecting to Debtor's Discharge ("Motion").  In the
Motion, the UST argues that the Chapter 7 case filed by Debtor Silvia
Elizabeth Mitchell ("Debtor") should be dismissed because: "Debtor
filed her bankruptcy petition in bad faith, having willfully and
intentionally engaged in abusive and fraudulent credit usage leading up

1  to her bankruptcy filing."   The Debtor opposed the Motion and raised

2  several evidentiary objections.   A hearing was held on October 19,

3  2006.   The UST and the Debtor both entered appearances on the record.

4  At the conclusion of the hearing, the Court took the UST's Motion and

5  the Debtor's evidentiary objections under submission.

6  ## I.  Jurisdiction

7      This Court has jurisdiction over this case pursuant to 28 U.S.C. §

8  1334(a)(2006) ("[T]he district courts shall have original and exclusive

9  jurisdiction of all cases under title 11."), 28 U.S.C. § 157(a) ("Each

10  district court may provide that any or all cases under title 11 and any

11  or all proceedings arising under title 11 or arising in or related to a

12  case under title 11 shall be referred to the bankruptcy judges for the

13  district."), General Order No. 266 of the United States District Court

14  for the Central District of California (referring "all cases under

15  Title 11 and all proceedings under Title 11 or arising in or related to

16  a case under Title 11" to the district's bankruptcy judges), and 28

17  U.S.C. § 157(b) ("Bankruptcy judges may hear and determine . . . all

18  core proceedings . . . .").   The UST's Motion to dismiss is a core

19  proceeding because it was brought under 11 U.S.C. § 707(b), which

20  governs abuse of the provisions of Chapter 7 of the Bankruptcy Code.

21  See City of Moreno Valley v. Century-TCI Cal., L.P., No. EDCV 02-1387-

22  VAP (SGLx), 2003 U.S. Dist. LEXIS 4490, at *6 (C.D. Cal. March 21,

23  2003) ("Core proceedings are those that: (1) involve a cause of action

24  created or determined by a statutory provision of title 11 [the

25  Bankruptcy Code]; or (2) are not based on any right expressly created

26  by title 11, but nevertheless, would have no existence outside of the

27  bankruptcy.")

28

**II.   Statement of Facts and Procedural History**

The Debtor filed a voluntary Chapter 7 petition on May 8, 2006. The original meeting of creditors under 11 U.S.C. § 341(a) was held on June 13, 2006 and a continued 341(a) meeting was held on July 27, 2006. The Debtor attended both meetings.

On August 11, 2006, the UST filed the Motion currently before the Court arguing that the Debtor's case should be dismissed under § 707(b)(3)(A) as having been commenced in bad faith.[1]  Specifically, the UST contends that "given her long-standing lack of income, the Debtor's credit transactions in the months leading up to her bankruptcy filing, both before and after consulting bankruptcy counsel, were abusive and made in anticipation of filing the instant bankruptcy case."   The UST has submitted the following evidence in support of its allegations: (1) the Debtor has $62,521.00 in non-priority unsecured debt, which she has identified as being as primarily consumer in nature (as opposed to debt incurred for business purposes); (2) the Debtor stated under oath during her initial 341(a) meeting that she has been unemployed since 2004 and that she is not currently experiencing any medical condition that would prevent her from working; (3) the Debtor was unemployed throughout the year 2003; (4) in the past four years, the Debtor has earned a grand total of $11,000, all of it during calendar year 2004; (5) the Debtor admits that she has earned no income at all during 2003, 2005, and 2006; (6) the Debtor's Statement of Financial Affairs and bankruptcy schedules list no other sources of income; (7) according to the credit card statements submitted to the UST by the Debtor, she

---

[1] Unless otherwise indicated, all statutory citations refer to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

1    spent at least $15,386.32 during the year 2005 on products and services

2    labeled by the UST as "non-essential" and organized into various

3    categories including "dining out", "women's fashions and accessories"[2],

4    "electronics and personal property"[3], and "beauty treatments and

5    related products"[4]; (8) the Debtor contacted a bankruptcy attorney on

6    December 1, 2005 when she tendered $100.00 to the Price Law Group,

7    reportedly to retain that law firm to act as bankruptcy counsel for her

8    roommate, Angel Dawn McGaugh; (9) the Debtor made an additional payment

9    of $1,449,00 to the Price Law Group on February 28, 2006; (10) from

10   January 2006 to April 2006 (the four months before she filed her

11   bankruptcy petition), the Debtor spent $13,531.52 on "dining out", "pet

12   pampering,"[5] "women's fashions and accessories"[6], "electronics and

---

[2] Even though she listed only $400 worth of clothing assets on Schedule B (which was filed with her petition), the Debtor's credit card statements reveal purchases of at least $7,698.56 during 2005 at a variety of clothiers including Barneys New York, Anthropologie, Lucky Brand Dungarees, Victoria's Secret, and Frederick's of Hollywood.

[3] The Debtor spent at least $3,469.60 in 2005 on "electronics and personal property" at various retailers including Best Buy, Crate & Barrel, Far Corners Antiques, and Bed Bath & Beyond.

[4] Between January 2005 and December 2005, the Debtor spent $2,985.32 on "Beauty Treatments and Related Products" at various businesses including Chroma Makeup Studio, Colosseum Fitness Center, Studio Nail & Skin Care, Beverly Hills Health & Fitness, Brooks Massage Therapy, L Salon, and Turn Back Time, a "Cosmetic Medical Center" located in Santa Monica, California.

[5] According to her January 2006 to April 2006 credit card statements, the Debtor spent at least $1,223.42 at establishments such as Doggie Styles, Melrose Pet Grooming, the Bark, LA Dogworks, Lucky Pup Designs, Barking Lot, Petlove, Collar & Leash, Petville, and Holistic Hound.   The UST labels these expenditures "pet pampering."

[6] In the first four months of 2006, the Debtor spent at least $5,250.56 on "women's fashions and accessories."   This is in

personal property", and "beauty treatments and related products"[7]; (11)
the Debtor's January 2006 to April 2006 spending amounts to a
substantial increase from $1,282.19 average monthly spending on "non-
essentials" during 2005 to $3007.00 per month in 2006; (12) the Debtor
allowed at least $355.51 in charges on one credit card during March and
April 2006 by Ms. Mcgaugh; (13) between January 4, 2006 and April 17,
2006, the Debtor took one credit card from a zero balance to a balance
owing of $7,708.00; (14) with a different credit card, the Debtor went
from a zero balance to owing $1,435.76 in just six days in April 2006;
(15) over a 16-day period near the end of 2005, the Debtor incurred
over $11,000 in purchases against one credit card account; and (16) in
the seven months between July 2005 and February 2006, the Debtor opened
at least five new credit card accounts and charged $39,473.00 against
those accounts, which amounts to 63.2% of her total reported non-
priority unsecured debt.

In addition, the UST notes that the Debtor received at least
$21,092.59 in deposits to her bank account between March 2005 and April
2006 but failed to fully account for this income in her schedules and
Statement of Financial Affairs as required by 11 U.S.C. § 521(a)(1).
At least $16,654 of these funds was deposited in the six months leading
up to her bankruptcy filing. Moreover, the UST claims that, "while the
Debtor has been completely without earned income throughout 2005 and
2006 and has affirmed in writing that she has never taken any cash
advances on any of her credit cards or transferred balances from card

---

addition to the $7,698.56 she spent in 2005.

[7] The Debtor spent $1,709.03 on "beauty treatments and related
products" between January 2006 and April 2006 at many of the same
outfits she frequented during 2005.

1  to card (a practice known as 'kiting') in the 12 months before filing

2  the present bankruptcy case," three substantial electronic payments

3  totaling $14,025.00 were made to reduce several of her credit card

4  balances.   Finally, the UST states that the Debtor created a false

5  sense of financial solvency by lying to at least one creditor, American

6  Express, in July 2005 and claiming that she was then employed by

7  Straight Edge Productions and earning $80,000 per year.   The UST argues

8  that these deceptive acts by the Debtor should viewed as additional

9  evidence of bad faith and of her abuse of the provisions of Chapter 7.

10      Alternatively, if the Court were inclined to deny the Motion, the

11  UST requests that the bar date for filing a § 727 complaint to deny the

12  Debtor's discharge be extended by at least 90 days from the date of the

13  hearing on the Motion.   The UST requests this additional time so that

14  it may complete its "pending investigation, including formal discovery

15  and a Rule 2004 examination, to obtain additional testimony, and/or

16  other evidence produced by the Debtor or other parties in interest."

17      In her Opposition to U.S. Trustee's Motion to Dismiss Chapter 7

18  Case and Extend Bar Date ("Opposition"), the Debtor argues that the

19  facts alleged by the UST "simply do not add up to bad faith or abuse"

20  and that her inability to pay her debts is the result of "bad luck, not

21  bad faith."   The Debtor claims that she has an "earning capacity" "well

22  in excess of $6,250 per month," which is evidence that "but for her

23  unexpected inability to find work in her profession she would easily

24  have been able to pay her consumer debts."   The Debtor states that she

25  is an FAA-certified pilot and that she has had two "informal

26  interviews" since the Spring of 2005.   One of these "informal

27  interviews" was with a pilot at America West Airlines (which has since

28

-6-

merged with US Airways).  According to the Debtor, a job there "would
have paid well in excess of $100,000 after a probationary period and a
few years with the airline."  The other "informal interview" was with
the flight department at Hewlett Packard where, according to the
Debtor, her salary would quickly "increase to over $100,000 per year."
Neither of the Debtor's "informal interviews" resulted in an offer of
employment.  Regardless, based upon her training and experience, the
Debtor believes that one day she will work as commercial airline pilot
and earn between $160,000 and $230,000 per year.  In light of this
"earning capacity," the Debtor argues that she has the "ability to earn
more than sufficient income to service her accumulated debt."  The
Debtor also contends that there is no evidence showing that her
"proposed family budget is excessive or extravagant" but "to the
contrary, her monthly expenses are less than $1000."[8]

In addition, the Debtor denies having any "discussions with any
attorney at the Price Law Group regarding the bankruptcy process."  The
Debtor states that, at the time she paid the Price Law Group to
represent Ms. Mcgaugh, she and Ms. Mcgaugh discussed "keeping [the
Debtor's] credit clean" so that they "may attempt to purchase a home
together once [the Debtor] was employed as a pilot."

Finally, the Debtor claims that her bankruptcy schedules correctly
reflect her "assets, liabilities, and financial condition" and that her
"statement of income and expenses is accurate."  She states that,

---

[8] Although the Debtor did not specify what her "proposed
family budget" entails, it appears that she may have been referring
to  the expenses listed in Schedule J, which she filed with her
bankruptcy petition.    On Schedule J (Current Expenditures of
Individual Debtor), the Debtor claims that her monthly expenses
total $990.00.

between November 2005 and April 2006, a friend deposited $16,500 into her bank accounts to help cover living expenses. The Debtor states that her friend has not asked her to pay back this money, but rather she "has requested that [the Debtor] give back by donating [her] time to a charity of [her] choice." The Debtor also argues that "[t]he UST's assertion that [she] made 'three substantial electronic payments' [towards her credit card debt] is incorrect." The Debtor states, however, that she "did attempt to lower [her] interest rate by accepting lower interest offers from credit card companies" "with the full expectation of paying [her] creditors back as soon as [she] commenced working as a commercial pilot."

The Debtor also filed her Evidentiary Objections to Declarations of Wendy C. Sadovnick raising several objections to the Declaration of Bankruptcy Analyst, which was signed by Wendy Sadovnick and submitted as part of the Motion ("Sadovnick Declaration"), and the Supplemental Declaration of Bankruptcy Analyst Wendy Carole Sadovnick in Further Support of United States Trustee's Notice of Motion and Motion to Dismiss Chapter 7 Case Pursuant to 11 U.S.C. § 707(b)(3)(A) ("Supplemental Sadovnick Declaration").[9] Specifically, the Debtor argues that a certain statement in the Sadovnick Declaration, which indicates that the Debtor had charged nearly $11,351.25 over a 16-day period on mostly "non-essential items", was speculative and lacked foundation as "there is no factual basis set forth for the contention that declarant has knowledge of the Debtor's mind-set and intentions" or "that the charges referenced were for non-essential items and

---

[9] According to her declarations, Ms. Sadovnick has been employed as a Bankruptcy Analyst by the Office of the United States Trustee for the Central District of California since 1985.

1  discretionary items."   The Debtor raises these very same objections to

2  various portions of the Sadovnick Declaration that claim that the

3  Debtor used her credit cards during 2005 and 2006 to incur $28,917.84

4  in mostly "extravagant" expenses.   In addition, the Debtor objects to

5  the paragraph in the Supplemental Sadovnick Declaration that states

6  that the Debtor lied to American Express about being employed by

7  Straight Edge Productions (and earning $80,000 per year) as being

8  inadmissible hearsay, as being speculative, and as lacking foundation.

9  Finally, the Debtor argues that other statements in the Supplemental

10 Sadovnick Declaration, which indicate that certain of the Debtor's

11 credit card expenditures were "discretionary in nature" and included

12 the purchase of "non-essential items," lack foundation and are

13 speculative in that "there is no factual basis set forth for the

14 contention that the declarant has knowledge of the Debtor's mind-set

15 and intentions" or "that the charges referenced were for non-essential

16 items and discretionary items."

17       The UST filed a Reply to Debtor's Evidentiary Objections to

18 Declarations of Wendy C. Sadovnick ("Reply to Evidentiary Objections")

19 arguing that each of the Debtor's objections should be overruled.   As

20 to the objections claiming lack of foundation and speculation, the UST

21 argues that the relevant statements are the opinions of a lay witness,

22 which are adequately supported by the various Exhibits attached to the

23 Motion.   The UST also asserts that the Court should overrule the

24 Debtor's hearsay objections because the relevant statements by Ms.

25 Sadovnick "only reiterate" the Debtor's own comments as recorded in the

26 American Express records attached to the Supplemental Sadovnick

27 Declaration as Exhibit "B".

28

1      The UST also filed a Reply to Debtor's Opposition to U.S.

2 Trustee's Motion to Dismiss Chapter 7 Case and Extend Bar Date ("Reply

3 to Opposition") emphasizing that its Motion to dismiss is based on §

4 707(b)(3)(A) ("bad faith") not § 707(b)(3)(B) (the "totality of the

5 circumstances . . . of the debtor's financial situation").  The UST

6 also disputes the validity of the Debtor's arguments concerning her

7 "earning potential".  It notes that during her last job (in 2004) she

8 earned only $11,000 per year.  The UST further explains that the Debtor

9 stated under oath during her first § 341(a) meeting that, in the

10 immediate future, she would likely take a similar low-paying job.  In

11 addition, the UST argues that the Debtor, at a time when she was

12 unemployed and had no certain prospects of future employment, used her

13 credit cards to support an "extravagant" lifestyle in complete

14 disregard for her limited financial resources.  According to the UST,

15 the Debtor's "hopes of one day finding suitable employment do not

16 mitigate the bad faith of the types of expenses she incurred in her

17 straightened circumstances." Finally, the UST argues that the following

18 actions by the Debtor provide circumstantial evidence of bad faith and

19 of the Debtor's intent to defraud creditors: (1) using credit cards to

20 "maintain a lifestyle she had never earned enough to support" for

21 nearly a year and half after leaving her last job; (2) lying about her

22 employment status and annual income in order to obtain credit; (3)

23 failing to disclose a $16,500 "gift" in her schedules and Statement of

24 Financial Affairs; and (4) dramatically increasing her credit card

25 spending in the months leading up to her chapter 7 filing and after

26 having contacted a bankruptcy attorney.

27      During the hearing on the Motion, the UST requested that, in

28 addition to granting its Motion, the Court enter an order barring the

-10-

1 Debtor from refiling another Chapter 7 petition for 180 days.    The

2 Debtor opposed the imposition of such a bar, asserting that this case

3 presents none of the indicia that would lead to a bar on refiling under

4 § 109 of the Bankruptcy Code.    In addition, the Debtor argued that

5 while the facts in this case might seem to approach bad faith, they do

6 not quite reach it because: (1) the Debtor took no cash advances

7 against her credit cards; (2) she has not been gambling; (3) there have

8 been no § 523 complaints; (4) there were no fraud complaints prior to

9 the bankruptcy filing; and (5) there were no prior bankruptcy cases.

10 Finally, the Debtor raised two other objections to the introduction of

11 the Sadovnick declarations.    First, she claimed that they constitute

12 improper advocacy before a Court by a non-attorney.    Second, she argued

13 that Ms. Sadovnick is disqualified from serving as a witness in this

14 case because she is employed by the UST.

15         For the reasons given *infra*, the Court finds that the each of the

16 Debtor's evidentiary objections is without merit and that she filed her

17 Chapter 7 petition in bad faith.    Furthermore, the Court concludes that

18 filing one Chapter 7 petition in bad faith is sufficient "cause" under

19 11 U.S.C. § 349 to impose a 180-day bar against refiling another

20 Chapter 7 petition.    Accordingly, the Court overrules the evidentiary

21 objections, grants the Motion, dismisses the Debtor's case, and orders

22 that she be barred from filing another Chapter 7 petition for 180 days.

23 **III.  Discussion**

24         In relevant part, § 707(b) of the Bankruptcy Code states:

25         After notice and a hearing, the court, on its own motion or on
        a motion by the United States Trustee . . . or any party in
26         interest, may dismiss a case filed by an individual debtor
        under [Chapter 7] whose debts are primarily consumer debts, or,
27         with the debtor's consent, convert such a case to a case under
        chapter 11 or 13 of this title, if it finds that the granting
28         of relief would be an abuse of the provisions of [Chapter 7 of

the Bankruptcy Code] . . . In considering . . . whether the granting of relief would be an abuse of the provisions of [Chapter 7] in a case in which the presumption [of abuse laid out in § 707(b)(2)(A)(I)] does not arise or is rebutted,[10] the court shall consider – (A) whether the debtor filed the petition in bad faith; or (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse."

11 U.S.C. § 707(b)(1), (3).    Section 707(b) was amended as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").    Among other things, the "substantial abuse" threshold for § 707(b) dismissals was replaced with a simple "abuse" standard.    See 11 U.S.C. § 707(b)(1).    In addition, BAPCPA added two tests to determine whether an "abuse" of Chapter 7 exists: (1) the filing of a petition in "bad faith" (11 U.S.C. § 707(b)(3)(A)); and whether "the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse" (11 U.S.C. § 707(b)(3)(B)).

Section 707(b) applies to the Debtor's case because, as she has acknowledged in her petition, she is an individual debtor under Chapter 7 whose debts are primarily consumer in nature.    Furthermore, only § 707(b)(3)(A) (dismissal based upon a debtor's bad faith filing of a Chapter 7 petition) is at issue in this case due to UST's explicit limitation of its request for relief to that Code section.    Before

---

[10] Pursuant to § 707(b)(2), a presumption of abuse of Chapter 7 arises in certain cases.    See 11 U.S.C. § 707(b)(2)(A)(i)(I)-(II).    However, when a debtor's income is below the applicable median family income, neither the court nor any party in interest may bring a motion claiming presumptive abuse.    11 U.S.C. § 707(b)(7)(i).    In this case, the Debtor asserts (and there is no evidence to contradict) that she currently has no income, which is certainly below the relevant median family income.    Therefore, pursuant to § 707(b)(7), no party may argue that the Debtor's case should be dismissed as being presumptively abusive under § 707(b)(2).

1  addressing the merits of the UST's Motion, however, the Court must

2  first resolve the Debtor's various evidentiary objections.

3              **A.    The Debtor's Evidentiary Objections**

4        As explained *supra*, the Debtor challenges the admissibility of

5  various statements made in the Sadovnick Declarations.   Each of these

6  objections, however, is without merit.

7        The Debtor's hearsay objection to statements concerning her

8  falsification of an American Express credit application is hereby

9  overruled for two reasons.   First, a party's own statements, when

10  offered against them as evidence, are not hearsay.  See, Fed. R. Evid.

11  801(d)(2)(A) ("A statement is not hearsay if . . . the statement is

12  offered against a party and is . . . the party's own statement, in

13  either an individual or a representative capacity."); United States v.

14  Arteaga, 117 F.3d 388, 395 (9th Cir. 1997) ("[A] party's own statement,

15  if offered against that party, is not hearsay . . . .").   Second, the

16  American Express records containing the Debtor's false statements are

17  admissible under the business records exception to the hearsay rule

18  given that they are accompanied by a certification that: (1) they were

19  "made at or near the time of the events reflected" in the documents;

20  (2) they were "kept in good faith and [were] created in the normal

21  course of business"; and (3) "it is the regular course of business of

22  American Express Travel Related Services Company, Inc. to make these

23  records." See, Fed Rules Evid R 803(6)   ("A memorandum, report, record,

24  or data compilation, in any form, of acts, events, conditions,

25  opinions, or diagnoses, made at or near the time by, or from

26  information transmitted by, a person with knowledge, if kept in the

27  course of a regularly conducted business activity, and if it was the

28  regular practice of that business activity to make the memorandum,

1  report, record or data compilation [are not excluded by the  hearsay

2  rule].").

3      Likewise, the Court hereby overrules the Debtor's objections that

4  various statements in the Sadovnick declarations are speculative and

5  lack foundation in that "there is no factual basis set forth for the

6  contention that [Ms. Sadovnick] has knowledge of the Debtor's mind-set

7  and intentions" or "that the charges referenced were for non-essential

8  items and discretionary items."  Contrary to the Debtor's assertions,

9  the Sadovnick declarations do not express opinions concerning the

10  Debtor's state of mind and intentions.  Rather, the declarations

11  describe facts that the UST, in its Motion, uses to argue the Debtor

12  filed her Chapter 7 petition in bad faith.  Furthermore, while Ms.

13  Sadovnick does describe some of the Debtor's purchases as

14  "discretionary" and "non-essential", there is a sufficient foundation

15  for these statements in the exhibits to the Motion and the Supplemental

16  Sadovnick Declaration.  For example, the Debtor's various credit card

17  statements, which were submitted as to the Court as exhibits, show that

18  the Debtor made substantial purchases at retailers such as "Doggie

19  Styles", "Wilshire Beauty Supply", "Barking Lot" pet groomers, "L

20  Salon", "Comcast Cable", "Purple Circle Salon", "Studio Nail and Skin",

21  "Cowgirl Hall of Fame", "Chroma Makeup Studio", "Turn Back Time" a

22  cosmetic medical center, "Far Corners Antiques", and "Tiffany and Co."

23  The Court is convinced that, in identifying the businesses where the

24  Debtor incurred her credit card debt, Ms. Sadovnick has laid a

25  sufficient foundation for her opinion that many of the Debtor's

26  purchases were for "discretionary" or "non-essential" items.  In fact,

27  it is difficult to image that the Debtor could make any other type of

28

1 | purchase at Tiffany & Co. or the various beauty salons, make up
2 | studios, and dog groomers she visited.

3 | Furthermore, the Court hereby overrules the Debtor's objections
4 | concerning improper advocacy by Ms. Sadovnick. As explained *supra*, the
5 | Sadovnick declarations do explicitly argue that the Debtor filed her
6 | petition in bad faith. Rather, they set forth facts concerning the
7 | Debtor's use of her credit cards and express an adequately-supported
8 | opinion that some of the Debtor's purchases were "discretionary" and
9 | "non-essential". Reciting the history of the Debtor's credit card
10 | expenditures and opining that some of them were not necessary for
11 | survival is a far cry from asserting a legal argument that the Debtor
12 | filed her bankruptcy petition in bad faith.

13 | Finally, the Court hereby overrules the Debtor's objection
14 | claiming that Ms. Sadovnick is disqualified from submitting a
15 | declaration in support of the Motion because she is employed by the
16 | UST. The Debtor argues that the Court should not consider the
17 | Sadovnick Declarations because, as an employee at the UST's office, she
18 | is disqualified from serving as a witness in any case in which the UST
19 | is involved. To support this argument, the Debtor likened Ms.
20 | Sadovnick's role to that of a secretary or paralegal of an attorney
21 | representing a party in a legal dispute. Because such a secretary or
22 | paralegal would be not be allowed to serve as a witness, the Debtor
23 | claims, Ms. Sadovnick should not be allowed to submit a declaration in
24 | support of the UST's Motion. The Court, however, does not find this
25 | analogy persuasive. As the Court understands the role of Bankruptcy
26 | Analysts at the UST's office, they do not act as support staff to an
27 | attorney in the same way that a secretary or paralegal does. Rather,
28 | they are more akin to an investigator hired by a party to look into the

1  facts of a case.  Because such investigators are clearly allowed to

2  serve as witnesses (see, e.g.,United States v. Riley, 1991 U.S. Dist.

3  LEXIS 1882, at *2-3 (S.D.N.Y. 1991)), the Court finds that Bankruptcy

4  Analysts at the UST's office should also be allowed to act as

5  witnesses.

6         **B.    The UST's Request for Dismissal under § 707(b)(3)(A)**

7         Having determined that it is supported by competent evidence, the

8  Court now turns to the merits of the Motion.  The UST argues that the

9  Debtor's case should be dismissed because she filed her Chapter 7

10 petition in bad faith.  The Debtor vigorously refutes this contention.

11 However, for the reasons given *infra*, the Court finds that there is

12 sufficient evidence of bad faith to warrant dismissal of the Debtor's

13 case under § 707(b)(3)(A).

14            **i)    Dismissal under § 707 after BAPCPA**

15       Before the enactment of BAPCPA, the Bankruptcy Appellate Panel for

16 the Ninth Circuit ("BAP") had determined that a case should not be

17 dismissed under § 707 if relief from a debtor's bad acts was available

18 under any other provision of the Bankruptcy Code.  See Padilla v.

19 Frazer (In re Padilla), 214 B.R. 496, 500 (B.A.P. 9th Cir. 1997), aff'd

20 *sub nom*. Neary v. Padilla (In re Padilla), 222 F.3d 1184 (9th Cir.

21 2000).  In Padilla, the bankruptcy court found that a debtor filed his

22 bankruptcy petition in bad faith and dismissed his case because, *inter*

23 *alia*: (1) over the course of a relatively short period of time, he

24 incurred credit card debt nearly equal to his annual income; (2) he

25 made transfers to insiders; and (3) he sold personal property to raise

26 cash for gambling.  Id. at 499.  The BAP, however, reversed the

27 dismissal, stating that relief for the particular types of bad conduct

28 attributed to the debtor was available under 11 U.S.C. §§ 522, 523 and

1   727 and concluding that § 707(a) "should not be used as a substitute

2   for these provisions."  Id.

3       However, in light of the recent addition of § 707(b)(3)(A) to the

4   Bankruptcy Code, the Court is now free to dismiss a case under § 707

5   even if the Bankruptcy Code provides another remedy for a debtor's "bad

6   faith" acts.  See 11 U.S.C. § 707(b)(3)(A).  This is because §

7   707(b)(3)(A) specifically lists the filing a petition in "bad faith" as

8   an example of "abuse" of the bankruptcy system warranting dismissal of

9   a Chapter 7 case.  See id.

10

11                 **ii)   Dismissal for "Abuse" Including the Filing of a**
                   **Petition in "Bad Faith"**

12      Under § 707(b)(3) courts must ascertain whether the granting of

13  relief to a debtor would constitute an "abuse" of the provisions of

14  Chapter 7.  11 U.S.C. § 707(b)(3).  In making this determination,

15  courts "shall consider . . . whether the debtor filed the petition in

16  bad faith [or] the totality of the circumstances . . . of the debtor's

17  financial situation demonstrates abuse."  11 U.S.C. §§ 707(b)(3)(A)-

18  (B).  The structure of these provisions indicates that the courts must

19  ultimately determine whether there is "abuse" of Chapter 7.  Such abuse

20  might include, but is not necessarily limited to, the filing of a

21  petition in "bad faith".

22      Prior to the enactment of BAPCPA, the Ninth Circuit formulated a

23  test for identifying "substantial abuse" under the former version of §

24  707(b).  See Price v. United States Trustee (In re Price), 353 F.3d

25  1135, 1139-1140 (9th Cir. 2004).  The Price test called for an

26  examination of all relevant facts and circumstances in a case,

27  including the following benchmarks: (1) whether the debtor has a

28  likelihood of sufficient future income to fund a Chapter 11, 12, or 13

plan which would pay a substantial portion of the unsecured claims; (2) whether the debtor's petition was filed as a consequence of illness, disability, unemployment, or some other calamity; (3) whether the schedules suggest the debtor obtained cash advancements and consumer goods on credit exceeding his or her ability to repay them; (4) whether the debtor's proposed family budget is excessive or extravagant; (5) whether the debtor's statement of income and expenses is misrepresentative of the debtor's financial condition; and (6) whether the debtor has engaged in eve-of-bankruptcy purchases. <u>Id.</u> Given that BAPCPA has lowered the threshold for dismissal under § 707(b) from "substantial abuse" to "abuse", it appears that the <u>Price</u> test (which was formulated for the more rigorous "substantial abuse" standard) is still relevant in making determinations of "abuse" under the current version of § 707(b)(3).

In addition, § 707(b)(3)(A) requires a finding as to whether a Chapter 7 petition was filed in "bad faith". That term, however, is not defined in the Bankruptcy Code. In fact, the meaning of "bad faith" under § 707(b)(3)(A) appears to be a matter of first impression among the various courts in the Ninth Circuit.

In this Court's view, the standards for bad faith dismissal used in Chapter 11 and Chapter 13 cases should, to the extent possible, also apply in Chapter 7 cases via § 707(b)(3)(A).[11] This is true for several

---

[11] Before the enactment of BAPCPA, in <u>Neary v. Padilla (In re Padilla)</u>, the Ninth Circuit concluded that "bad faith as a general proposition does not provide 'cause' to dismiss a Chapter 7 petition under § 707(a)" because Chapter 7 did not specifically include a requirement of "good faith" as do Chapters 11 and 13. <u>See</u> 222 F.3d at 1191-93. However, in light of the addition of § 707(b)(3) to the Bankruptcy Code, a debtor's bad faith now clearly constitutes grounds for dismissal of a Chapter 7 case.

reasons.  First, the harm of filing a voluntary petition in bad faith
is essentially the same no matter what chapter of the Bankruptcy Code a
debtor chooses to file under – creditors will be unjustly deprived of
their rights and the integrity of the bankruptcy system and of the
courts will be weakened.  Second, creating a variety of bad faith
standards for the filing of bankruptcy petitions would be unnecessarily
confusing and would only encourage potential bad-faith filers to choose
the chapter of the Code that appears to have the most favorable bad
faith test.  Finally, as things currently stand, the bad faith tests in
Chapter 11 and Chapter 13 are, at their core, basically the same.  Each
requires courts to evaluate all of the relevant facts and circumstances
in a case to determine whether a debtor's intention in filing a
bankruptcy petition is consistent with the purposes of the Bankruptcy
Code.  Compare In re Powers, 135 B.R. 980, 991-92 (Bankr. C.D. Cal.
1991) (stating that a determination of bad faith in Chapter 13 cases
"depends upon the facts and circumstances presented" and requires
"examination into any abuses of the provisions, purpose, or spirit of
bankruptcy law and into whether the debtor honestly needs the liberal
protection of the Bankruptcy Code") with In re Marshall, 298 B.R. 670,
681 (Bankr. C.D. Cal. 2003) (quoting In re Arnold, 806 F.2d 937, 939
(9th Cir. 1986))(explaining that a finding of bad faith in Chapter 11
cases "'depends upon an amalgam of factors and not upon a specific
fact'" and that "'[g]ood faith is lacking only when the debtor's
actions are a clear abuse of the bankruptcy process'").  This Court
sees no reason why "bad faith" in Chapter 7 should diverge from this
standard.

Courts applying the Chapter 11 and Chapter 13 bad faith tests
generally consider a variety of non-exclusive factors, including: (1)

the debtor's history of filings and dismissals (<u>Leavitt v. Soto (In re</u>
<u>Leavitt)</u>, 171 F.3d 1219, 1224 (9th Cir. 1999)); (2) whether a debtor
misrepresented facts in their petition, unfairly manipulated the
Bankruptcy Code, or otherwise filed the petition in an inequitable
manner (<u>Id.</u>; <u>Marshall</u>, 298 B.R. at 681); (3) whether the debtor is
actually in need of bankruptcy protection (<u>Marshall</u>, 298 B.R. at 681);
(4) whether the debtor intended to invoke the automatic stay for
improper purposes, such as for the sole objective of defeating state
court litigation (<u>Id.</u>; <u>Leavitt</u>, 171 F.3d at 1224); and (5) whether
egregious behavior is present (<u>Leavitt</u>, 171 F.3d at 1224).  However,
neither malice nor fraudulent intent by the debtor is required for a
finding of bad faith in Chapter 11 or Chapter 13 cases.  See <u>id.</u>
Furthermore, no single criterion should be considered dispositive, but
rather the entirety of the situation must be evaluated. See <u>Powers</u>, 135
B.R. at 991-921; <u>Marshall</u>, 298 B.R. at 681.

In sum, by borrowing from the Ninth Circuit's "substantial abuse"
test and from the bad faith criteria applicable to Chapter 11 and
Chapter 13 cases, this Court finds that the following legal standards
apply when determining whether to dismiss a case under § 707(b)(3)(A).
First, the Court must evaluate whether, in light of all the relevant
facts and circumstances, it appears that the debtor's intention in
filing a bankruptcy petition is inconsistent with the Chapter 7 goals
of providing a "fresh start" to debtors and maximizing the return to
creditors.[12]   See <u>Powers</u>, 135 B.R. at 991-921; <u>Marshall</u>, 298 B.R. at

---

[12] While many of the cases describing the test for bad faith
under Chapters 11 and 13 refer to the "totality of the
circumstances" (<u>See</u>, e.g., <u>Marshall</u>, 298 B.R. at 681), this Court
believes it is best to avoid such language when discussing §
707(b)(3)(A) in order to avoid confusion with § 707(b)(3)(B), which

1  681; See also In re De La Rosa, 91 B.R. 920, 922 (Bankr. S.D. Cal.

2  1988); In re Diego, 6 B.R. 468, 469 (Bankr. N.D. Cal. 1980).   In making

3  this determination, the Court will consider the following factors: (1)

4  whether the debtor has a likelihood of sufficient future income to fund

5  a Chapter 11, 12, or 13 plan which would pay a substantial portion of

6  the unsecured claims; (2) whether the debtor's petition was filed as a

7  consequence of illness, disability, unemployment, or some other

8  calamity; (3) whether the schedules suggest the debtor obtained cash

9  advancements and consumer goods on credit exceeding his or her ability

10  to repay them; (4) whether the debtor's proposed family budget is

11  excessive or extravagant; (5) whether the debtor's statement of income

12  and expenses is misrepresentative of the debtor's financial condition;

13  (6) whether the debtor has engaged in eve-of-bankruptcy purchases; (7)

14  whether the debtor has a history of bankruptcy petition filings and

15  case dismissals; (8) whether the debtor intended to invoke the

16  automatic stay for improper purposes, such as for the sole objective of

17  defeating state court litigation; and (9) whether egregious behavior is

18  present.  See Price, 353 F.3d at 1139-1140; Leavitt, 171 F.3d at 1224;

19  Marshall, 298 B.R. at 681.  As in Chapter 11 and Chapter 13 cases, this

20  Court finds that no single criterion should be considered dispositive,

21  but rather all of the facts in a case must be evaluated. See Powers,

22  135 B.R. at 991-921; Marshall, 298 B.R. at 681.  Finally, the Court

23  also concludes that neither malice nor fraudulent intent by the debtor

24  is required for a finding of bad faith under § 707(b)(3).  See Leavitt,

25  171 F.3d at 1224.

26

27  calls for an analysis of the "totality of the circumstances . . .
   of the debtor's financial situation.  See 11 U.S.C. § 707(b)(3)(A)-
28  (B).

1    Applying these standards to this case, the Court finds that
2    granting relief to the Debtor would amount to an abuse of the
3    provisions of Chapter 7 because the Debtor has filed her bankruptcy
4    petition in bad faith.   The Debtor stated under oath during her 341(a)
5    meeting that she has been unemployed since 2004.   During the time she
6    was employed, she received a total of $11,000 in annual income.
7    Regardless, as the UST has demonstrated, the Debtor spent a total of
8    $15,386.32 on "dining out," "women's fashions and accessories,"
9    "electronics and personal property," and "beauty treatments and related
10   products" during the year 2005.   Moreover, in the first four months of
11   2006 (leading up to her bankruptcy filing in May 2006), the Debtor
12   spent $13,531.52 on these same types of items.   This amounts to an
13   *increase* from $1,282.19 average monthly spending on non-essential
14   consumer goods during 2005 to $3007.00 per month in the four months
15   prior to the Debtor's bankruptcy filing in May 2006.   This increase in
16   spending occurred after the Debtor had contacted a bankruptcy attorney.
17   Furthermore, the amounts of debt incurred throughout 2005 ($15,386.32)
18   and during the first four months of 2006 ($13,531.52) far exceed the
19   Debtor's last reported annual income.   All of these facts indicate that
20   the Debtor has obtained "consumer goods on credit exceeding . . . [her]
21   ability to repay them" and that she engaged in several weeks worth of
22   "eve-of-bankruptcy purchases."   See Price, 353 F.3d at 1139-1140.

23   Morever, the Debtor has never claimed that there are mitigating
24   circumstances surrounding her credit card spending or the filing of her
25   Chapter 7 petition, such as illness, disability, or some other
26   calamity.   See id.   While the Debtor does claim that her inability to
27   service her debt is the result of her "unexpected inability to find
28   work in her profession", the Court is not convinced that this indicates

-22-

1 | a lack of bad faith because the Court is simply not persuaded that the
2 | Debtor's current unemployment is "unexpected". According to the
3 | evidence presented, the Debtor is not currently experiencing any
4 | medical condition that would prevent her from working. Furthermore,
5 | according to the Debtor's own statements, she has only attended two
6 | "informal" job interviews since leaving her last job in 2004. In light
7 | of these scant efforts, it is not surprising that the Debtor has not
8 | found employment.

9 | In addition, the UST notes that during the six months before
10 | filing for bankruptcy the Debtor received $16,664.59 in deposits to her
11 | bank account and $14,025.00 in electronic payments to several credit
12 | card accounts. However, the Debtor never listed this income in her
13 | schedules or Statement of Financial Affairs. These facts indicate that
14 | "the debtor's statement of income and expenses is misrepresentative of
15 | the debtor's financial condition." See id.

16 | Furthermore, the UST has presented evidence indicating that the
17 | Debtor created a false sense of financial solvency by lying to at least
18 | one potential creditor (claiming that she was employed by Straight Edge
19 | Productions and earning $80,000 per year) in order to obtain additional
20 | credit. The Debtor has never challenged these allegations. This
21 | fraudulent activity is "egregious behavior" that further indicates bad
22 | faith is present. See Leavitt, 171 F.3d at 1224.

23 | The Debtor claims that her history of credit card spending is not
24 | disproportionate to her income because, based on two "informal
25 | interviews" with potential employers (which never resulted in offers of
26 | employment), she has an "earning capacity" "well in excess of $6,250
27 | per month." This argument, however, is not convincing because the
28 | Debtor's "earning potential" is irrelevant. The appropriate question

1  is whether the Debtor purchased consumer goods on credit in excess of

2  her ability to pay for them.  See Price, 353 F.3d at 1139-1140.  This

3  is clearly the case here.  The Debtor has had no income since 2004.

4  She has had only two "informal" job interviews since then.  And, she

5  has used credit cards to purchase consumer goods and services in an

6  amount that is at least five times greater than her highest reported

7  annual income.  Regardless, even if this Court accepts the Debtor's

8  contentions concerning her "earning potential" of $160,000 to $230,000

9  per year, that would only strengthen the evidence indicating that

10 granting her relief would be an abuse of the provisions of Chapter 7.

11 See Price, 353 F.3d at 1139-1140 (stating that it would be an abuse of

12 Chapter 7 to grant relief to a debtor who is likely to have "sufficient

13 future income to fund a Chapter 11, 12, or 13 plan which would pay a

14 substantial portion of the unsecured claims").

15     The Debtor also states that there is no evidence that her

16 "proposed family budget is excessive or extravagant" but "to the

17 contrary, her monthly expenses are less than $1000."  However, this

18 contention is disingenuous.  The Debtor has not, on average, spent less

19 than $1200 per month in the nearly 18 months before she filed for

20 bankruptcy.  In fact, during early 2006 she spent, on a monthly basis,

21 nearly three times her "proposed budget".

22     There is also additional evidence of bad faith.  In December 2005,

23 before the Debtor began increasing her monthly credit card spending to

24 approximately $3000 per month, she tendered $100.00 to the Price Law

25 Group (a bankruptcy law firm).  She made an additional payment of

26 $1,449.00 to the Price Law Group on February 28, 2006.  The Debtor

27 claims that she paid these sums to retain that law firm to act as

28 bankruptcy counsel for her roommate, Ms. Mcgaugh, and that she never

1  discussed bankruptcy relief with any attorney at the firm.  However,

2  the Court finds little credible evidence to support this assertion.

3  The Debtor has not provided the Court with a copy of a retainer

4  agreement showing that the Price Law Group represented Ms. Mcgaugh and

5  not the Debtor.  Nor has she presented a declaration made on behalf of

6  the Price Law Group to confirm that she never spoke to any attorney

7  there concerning the availability of bankruptcy relief.  The only

8  meaningful evidence before the Court is the Debtor's own declaration.

9  However, given her lack of candor in her bankruptcy schedules and

10  Statement of Financial Affairs and her history of making

11  misrepresentations to creditors, the Court has doubts concerning the

12  Debtor's credibility.  Regardless, even if the Debtor's claims are true

13  they, (at a minimum) indicate that the Debtor was cognizant of the

14  possibility of bankruptcy relief when she began to dramatically

15  increase her credit card spending and incurred at least $13,531.52 in

16  credit card debt for non-essential consumer goods in only four months.

17  According to the Debtor's bankruptcy schedules and Statement of

18  Financial Affairs (which she continues to claim are accurate), the

19  Debtor incurred all of these expenses without any source of income.

20      In short, the Court finds that granting relief to the Debtor in

21  this case would be an abuse of the provisions of Chapter 7 of the

22  Bankruptcy Code because the Debtor has filed her petition in bad faith.

23  The Debtor is seeking more than a "fresh start".  She is seeking in

24  impermissible "head start" at the expense of her creditors.  See In re

25  Vangen, 334 B.R. 241, 245 (Bankr. W.D. Wis. 2005) (citing Grogan v.

26  Garner, 498 U.S. 279, 286 (1991)).

27

28

1                     **C.   The UST's Request for a 180-Day Bar**

2          The UST also requests that the Court enter an order barring the

3    Debtor from refiling another Chapter 7 petition for 180 days.   The

4    Debtor opposes the imposition of such a bar, arguing that it is not

5    warranted under § 109 of the Bankruptcy Code.   The Court, however,

6    finds that a bar against refiling another Chapter 7 petition is

7    appropriate under 11 U.S.C. § 349.

8          In relevant part, § 349 provides that: "*Unless the court, for*

9    *cause, orders otherwise*, the dismissal of a case under this title [the

10   Bankruptcy Code] does not . . . prejudice the debtor with regard to the

11   filing of a subsequent petition under this title, except as provided in

12   section 109(g) of this title."   11 U.S.C. § 349(a)(emphasis added).   As

13   its plain language suggests, § 349 gives a court authority to "sanction

14   a debtor for cause by imposing a bar against re-filing."   In re

15   Grischkan, 320 B.R. 654, 661 (Bankr. D. Ohio 2005).   This Court finds

16   that filing one Chapter 7 petition in bad faith is sufficient "cause"

17   under 11 U.S.C. § 349 to impose a 180-day bar against refiling another

18   Chapter 7 petition.   Otherwise, the Debtor would be free to file

19   another Chapter 7 petition within days of the dismissal of this case

20   for bad faith.   Such a result is not consistent with the goal of

21   limiting abuse of the bankruptcy system that underlies § 707(b)(3)(A).

22       **IV.   Conclusion**

23         The Court finds that the each of the Debtor's evidentiary

24   objections is without merit and that granting her relief would be an

25   abuse of the provisions of Chapter 7 because she filed her petition in

26   bad faith.   Furthermore, the Court concludes that filing one Chapter 7

27   petition in bad faith is sufficient "cause" under 11 U.S.C. § 349 to

28   impose a 180-day bar against refiling another Chapter 7 petition.

1   Accordingly, the Court overrules the evidentiary objections,

2   grantsMotion, dismisses the Debtor's case, and orders that she be

3   barred from filing another Chapter 7 petition for 180 days.

4

5   DATED: December 4, 2006

6

7

8                                    ERNEST M. ROBLES
                              United States Bankruptcy Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2

3 I, _____*Lydia Gonzalez*_____ , hereby certify that **DEC 05 2006** ,

4 I sent by U.S. mail a true copy of the **MEMORANDUM OF DECISION GRANTING**

5 **THE UNITED STATES TRUSTEE'S MOTION TO DISMISS CHAPTER 7 CASE WITH**

6 **PREJUDICE PURSUANT TO 11 U.S.C. § 707(b)(3)(A)** to the parties at the

7 addresses listed below:

8

9 **Debtor**
Silvia Elizabeth Mitchell
10 624 N. Plymouth Apt 6
Los Angeles, CA 90004
11
**Debtor's Attorney**
12 Hale Andrew Antico
27538 Sierra Hwy Ste100
13 Santa Clarita, CA 91351

14 **Debtor's Attorney**
Jeffrey S Shinbrot
15 8383 Wilshire Blvd Ste 1010
Beverly Hills, CA 90211

**Chapter 7 Trustee**
Jeffrey I Golden
Weiland, Golden, Smiley, Wang
Ekva
P.O. Box 2470
Costa Mesa, CA 92628-2470

**United States Trustee**
725 S. Figueroa St., Suite 2600
Los Angeles, CA 90017

16

17

18

19

20                                      *Lydia Gonzalez*

21                            _____

22                                        Clerk

23

24

25

26

27

28